Thomas M. DIETERLE, Plaintiff-Appellant,

v.

C. M. (Bill) GATTON, Eldred Neubauer, William R. Jagoe, III, Wells T. Lovett, and Frank Hartz, Defendants-Appellees.

No. 16603.

United States Court of Appeals Sixth Circuit.

Sept. 29, 1966.

2. Reporter's transcript in Case No. 33087–CD, page 3231, line 6, through page 3232, line 24.

es, with a quantum meruit count. The plaintiff is a business consultant, doing economic and marketing studies, including studies for national banks and savings and loans.

Plaintiff's claim was that defendants engaged him to aid and assist them in procuring approval by the Comptroller of Currency of a charter for a new national bank in Owensboro, Kentucky; that he agreed, among other things, to make a full economic study of said city to prove the need for such bank in the locality and to prepare a statement projecting potential deposits and loans, profit and loss, over a period of three years, and other material banking information to submit to the Comptroller with the application of defendants for approval of the charter; that defendants agreed to compensate him for his services on a contingent-fee basis of $10,000 if they were successful in obtaining the charter.

Plaintiff alleged that he counseled with and advised the defendants in connection with their application for a charter; that he fully performed all the duties and obligations imposed on him by the contract, and in connection therewith incurred approximately $1,000 of out-of-pocket expenses; that, as a result of his services, the Comptroller on October 29, 1963, granted preliminary approval of the application for the charter; and that this was tantamount to the issuance of the charter, which would occur in the normal course of events after defendants complied with the usual conditions under which such charters are granted.

Thomas E. Sandidge, Owensboro, Ky. (Sandidge & Sandidge, Owensboro, Ky., on the brief), for appellant.

David C. Brodie, Owensboro, Ky., for appellees.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and GORDON,* District Judge.

WEICK, Chief Judge.

The action in the District Court was to recover for breach of contract for servic-

Plaintiff alleges that, after the preliminary approval had been obtained, defendants breached the contract by refusing to take any further steps to organize the national bank; but instead a majority of the defendants purchased a controlling interest in an existing state bank in said city, and then the defendants abandoned the organization of the new national bank.

The evidence disclosed that, prior to doing any work, plaintiff submitted to

---

* James F. Gordon, United States District Judge for the Western District of Kentucky.

defendants a written memorandum outlining his proposal for obtaining the charter, the services which he would render, and the compensation he expected to receive. With respect to compensation, it provided: "If we fail to get the charter, there will be no cost to the group [defendants]. If we are successful in getting the charter, my fee will be $10,000."

Plaintiff testified that the defendants orally accepted the written proposal. Defendants, however, testified to the effect that plaintiff was not to be compensated for his services and expenses until the charter was granted and the new bank was in actual operation, and then he was to be paid by the new bank.

The evidence showed without question that plaintiff rendered substantial services in procuring the preliminary approval of the charter. He made and completed the economic study and filed it with the Comptroller. He met with the Comptroller's field man and went over the entire matter with him. He counseled and advised the defendants as to the procedures necessary to be followed. He incurred out-of-pocket expenses approximating $1,000.

The Comptroller issued the preliminary approval of the charter. Both plaintiff and National Bank Examiner Ellis testified that this was tantamount to the issuance of the charter, which would be granted upon compliance with the usual conditions imposed by the Comptroller.

It was further undisputed that defendants did abandon the project because a majority of them decided to and did purchase the controlling shares of the state bank.

The District Judge, at the conclusion of the case, announced his decision orally and later adopted it as findings of fact and conclusions of law. He referred to the provisions in the written proposal and stated that no charter was actually obtained and that substantial matters remained to be done, such as raising money for capital and obtaining banking quarters and personnel, before the charter would be granted. These matters, however, were all to be performed by the defendants and were not properly obligations of plaintiff.

The Court further referred to the testimony of the defendants to the effect that the bank had to be in operation before plaintiff was entitled to payment for his services. Assuming that this was true, it was not the fault of plaintiff that the bank was not in operation. He did all that he was required or requested to do. The fact that the bank was not in operation resulted from the conduct of defendants in abandoning the project when they found it more convenient to purchase stock in the existing state bank.

Plaintiff recognized that other banks in the community might exert pressure on defendants not to organize the national bank, because he inserted in the memorandum the following:

"Inasmuch as the other banks may exert a good deal of pressure on your organizing group, each member should practically guarantee his staying with the group and his future investment before he becomes a member of the organizing group."

■ Where full performance of an express contract has been prevented by the wrongful act of a defendant, the plaintiff may sue for damages on the contract or elect to sue in quasi-contract for the reasonable value of what he has performed. Dean's Executor v. Griffin, 217 Ky. 603, 290 S.W. 483 (1927); Hoefflin v. Wilkerson, 184 Ky. 484, 210 S.W. 667 (1919); Cleveland Co. v. Standard Amusement Co., 103 Ohio St. 382, 133 N.E. 615 (1921).

■ The District Court referred to the conflicting testimony of the parties and found that "the plaintiff has failed to establish by a preponderance of the evidence that he was to receive this $10,000 fee for the work which he had actually accomplished, which was the obtaining of the preliminary approval by the Comptroller of the Currency." We interpret this as a finding that no express contract was made between the parties, although in view of the willful abandon-

ment of the project by defendants, it is difficult to see what further performance plaintiff could have rendered. The Court made no findings with respect to the count on "quantum meruit" (which we construe as a claim in quasi-contract in this case, not merely a different measure of recovery for breach of the alleged contract). Even if the parties failed to create a binding express contract by their prior dealings, the rendering of beneficial services by the plaintiff may create an obligation on the part of defendants. 1 Corbin on Contracts, Section 120 (1963 ed.).

■ There was substantial evidence in support of the quasi-contract count. The organization of the new national bank was never completed, and it did not reach the operation stage, not by reason of any act or neglect of the plaintiff, but solely because of the conduct of defendants in abandoning it. The plaintiff's evidence tended to prove that he rendered the services under the belief that he had a binding contract and that defendants knew or had reasonable grounds to believe that plaintiff expected to be compensated for his services and expenses, Batts v. Snook, 268 Ky. 682, 105 S.W.2d 843 (1937); and that the defendants obtained the benefit of these services and as a result secured preliminary approval of the bank charter by the Comptroller. The fact that the supposed contract for services may not have been binding does not defeat recovery in quasi-contract.

■ The defendants' evidence, as before stated, was to the effect that plaintiff was not to receive compensation for his services and expenses unless and until the new national bank was opened and in operation, and then he was to be paid by the new bank. If the court should find that this was the understanding between the parties, then plaintiff would have no reasonable ground to believe that he had a binding contract or to expect compensation for his services from the defendants and he could not recover.

■ Under these circumstances, in our opinion the District Court was required to consider and determine the issue on its merits. Thompson v. Hunter's Executor, Ky., 269 S.W.2d 266 (1954); Kellum v. Browning's Administrator, 231 Ky. 308, 21 S.W.2d 459 (1929); Cleveland Co. v. Standard Amusement Co., supra; Restatement, Restitution, section 40(b) and (c).

■ Since the complaint sets forth claims in excess of $10,000, the District Court had jurisdiction.

The judgment of the District Court is vacated, and the case remanded to adopt findings of fact and conclusions of law on the quasi-contract count, and to enter judgment in accordance therewith.